BENEDICTO JIMÉNEZ GONZÁLEZ, demandante y recurrido, *v.* CAPARRA MOTORS CORPORATION, demandada y recurrida; GENERAL MOTORS OVERSEAS DISTRIBUTORS CORPORATION, tercera demandada y recurrente.

*Número:* R-74-176     *Resuelto:* 12 de noviembre de 1975

---

*Agrait, Otero & Oliveras,* abogados de la tercera demandada y recurrente; *José E. Bengoa Toro,* abogado de Caparra Motors Corporation; *B. & S. Quiñones Elías,* abogados del demandante y recurrido.

PER CURIAM: El demandante compró a la Caparra Motors (Caparra) un automóvil nuevo, marca Buick, modelo Skylark de 1971. El vehículo había sido adquirido por la vendedora de la General Motors Distributors Corp., una subsidiaria de la fabricante, General Motors Corporation (General Motors). Poco después de la compra, el auto empezó a evidenciar algunos desperfectos: no frenaba adecuadamente, tiraba hacia el lado izquierdo y desgastaba anormalmente la banda de frenos y el tambor de la goma delantera izquierda.

En tres ocasiones, durante los meses de octubre y diciembre de 1971 y febrero de 1972, el demandante llevó el auto a los dos talleres de reparaciones de la Caparra Motors en Mayagüez. El efecto de las reparaciones que se le hacían duraba de 10 a 15 días, al cabo de los cuales el auto volvía a manifestar los mismos defectos. Fue reparado también en el taller de la Caparra Motors en San Juan. Allí le cambiaron las bandas de frenos, los chupones y los muelles de los frenos. El vehículo operó normalmente por unos días y luego se volvió a dañar. Durante los meses de febrero y julio de 1972, y visto que el defecto en los frenos persistía, el demandante llevó el auto alrededor de seis veces a otros dos lugares de reparación: al Garage Nelson Ponce en Adjuntas y a un mecánico en Isabela. Le cambiaron las piezas defectuosas al vehículo, pero al poco tiempo éste volvió a dañarse.

Debido a que el auto seguía con los desperfectos, el comprador instó demanda contra Caparra solicitando la resolución del contrato y daños y perjuicios. La vendedora presentó demanda de tercero contra General Motors aduciendo que el vehículo tenía vicios ocultos, los cuales la obligaban a in-

demnizar a Caparra, "por cualquier cantidad de dinero que la Caparra Motors fuese condenada a pagar al demandante, así como por cualquier pérdida que sufra la vendedora por los hechos alegados en la demanda." La General Motors contestó y reconvino.

El 3 de mayo de 1973, el Tribunal Superior, Sala de Mayagüez, Vera Mercado J., declaró con lugar la demanda contra Caparra y decretó la resolución del contrato de compraventa. Condenó a la General Motors y a Caparra a pagar solidariamente al demandante la suma de $5,995.77, intereses legales desde la fecha de compra hasta la fecha de pago, costas y honorarios de abogado. Declaró con lugar la demanda contra tercero y sin lugar la reconvención.

La General Motors acudió ante nos. Acordamos revisar la sentencia dictada en este caso "a los únicos fines de revisar los efectos de la sentencia en cuanto a la demanda contra tercero y la reconvención de la tercera demandada contra la tercera demandante." En otras palabras, dejamos subsistente aquella parte de la sentencia que responsabilizó solidariamente a Caparra y a General Motors y limitamos la revisión a considerar la responsabilidad que tenían entre sí Caparra y General Motors.

A tenor con la garantía que le fue expedida al demandante, al comprar el vehículo, la General Motors repararía o a su opción sustituiría cualquier parte defectuosa del auto, con excepción de las llantas, las cuales serían separadamente garantizadas por el fabricante de éstas.[1] Las reparaciones

---

[1] "Buick (Buick Motor Division, General Motors Corporation) garantiza al dueño de cada automóvil Buick de pasajeros modelo 1971, que por un período de 12 meses o 12,000 millas, cualquiera que ocurra primero, reparará, o a su opción sustituirá cualquier pieza defectuosa o que tenga algún desperfecto—excepto las llantas que se garantizan separadamente por el fabricante de éstas.

"El período de 12 meses/12,000 millas comenzará en la fecha en que el auto sea entregado al primer comprador al detal o si el auto es puesto en exhibición o usado como un auto de la compañía, antes de la venta al

hechas bajo esta garantía serían realizadas por cualquier distribuidor o *dealer* de la Buick dentro de un término razonable después de la entrega del auto. (²) La General Motors le reembolsaría a su distribuidora cualquier reparación o sustitución de piezas que ésta hiciese bajo los términos de la garantía. (³)

El contrato celebrado entre Caparra y General Motors disponía que en caso de que Caparra no pudiese resolver alguna queja con prontitud, notificaría prontamente y en detalle a la Foreign Distributors Division, una división de General Motors. Textualmente establece dicha cláusula:

"12. Quejas de los dueños

El distribuidor recibirá, investigará y manejará todas las quejas recibidas de dueños de vehículos de motor con miras a asegurar y mantener el buen nombre del Distribuidor, la Foreign Distributor Division y Motor Vehicles hacia el público. *Todas las quejas recibidas por el Distribuidor, que éste no pueda*

---

detal, el período comenzará en la fecha en que el automóvil sea primeramente puesto en ese servicio.

"Esta garantía cubre solo desperfectos resultantes de defectos en materiales o mano de obra."

(²) "1. Las reparaciones incluidas bajo esta garantía serán realizadas por cualquier distribuidor Buick autorizado dentro de un período de tiempo razonable siguiente a la entrega del auto en el lugar de negocio del distribuidor."

(³) "Buick remunerará al distribuidor autorizado de Buick por la reparación o sustitución de piezas, hecha bajo garantía, de cualquier parte del auto encontrada defectuosa, o que sea la causa de su mal funcionamiento."

Además en el contrato entre distribuidora y fabricante también se establece:

. . . . . . . .

"Piezas: Si la pieza o piezas sustituidas son encontradas defectuosas por la Foreign Distributors Division, F.D.D. reembolsará al distribuidor o acreditará a la cuenta de éste una suma en dinero equivalente al costo de la pieza en ese momento, al distribuidor de tales piezas.

"Mano de Obra: Foreign Distributor Division pagará o le dará un crédito al Distribuidor, en base a un Sistema de Retribución Uniforme (*Flat Rate System*) de porciones de tiempo recomendado y suplido por F.D.D., con las retribuciones de mano de obra acordadas con la F.D.D."

*corregir con presteza serán notificadas con prontitud y en detalle a la F.D.D."* (Énfasis suplido.)

La Caparra no notificó a la General Motors sobre el desperfecto del auto del demandante ni solicitó aprobación o ayuda técnica para efectuar reparación alguna en el auto del demandante. La primera y única notificación de la distribuidora a la manufacturera referente a este vehículo lo fue la demanda de tercero.

El tribunal de instancia determinó que la cláusula del contrato que requería a la Caparra notificar al fabricante no es de aplicación a los hechos de este caso porque si bien es verdad que los tres talleres a donde se llevó el vehículo a reparar pertenecían a la Caparra, el personal de mecánica de estos talleres era distinto y, además, el vehículo se reparaba y funcionaba por diez o quince días después de la reparación. [4]

El hecho de que el personal de los tres talleres operados por Caparra fuera distinto no excusa de cumplir con los términos del contrato firmado entre las partes. Ciertamente la obligación de notificar no era del personal de mecánica sino de la distribuidora y el personal sería distinto pero la organización a quien servía era Caparra, agente distribuidor

---

[4] En las determinaciones de hecho números 19 y 20 el Tribunal expresó:

"19. En conformidad con la práctica seguida entre las partes Caparra Motors no solicitó asistencia técnica de la General Motors Overseas en cuanto a los problemas del vehículo del demandante. Aunque el demandante llevó el vehículo en 4 ocasiones a los talleres de la demandada, lo llevó a 3 talleres distintos que tienen diferente personal. Ninguno de los talleres de la Caparra Motors bregó con el vehículo en más de 2 ocasiones. Por esa razón no tenemos ante nosotros la situación en que se lleva el vehículo a un taller de la Caparra Motors Corporation en 7 u 8 ocasiones con el mismo problema.

"20. Cada vez que el demandante llevaba el vehículo a los talleres de Caparra Motors se le reparaba y se le entregaba, funcionando normalmente el vehículo por un término de 10 a 15 días después de la reparación. En vista de esos hechos tampoco se trataba de la situación que un vehículo estuviera en el taller de Caparra Motors sin que ésta pudiera repararlo."

de General Motors. Tampoco es razón válida para eximir de cumplir con los términos de lo convenido el hecho de que cada vez que el vehículo era reparado funcionaba bien por 10 ó 15 días. Ese mismo hecho era más bien razón para hacer la notificación al fabricante pues era una demostración de que no podían corregir permanentemente el desperfecto que tenía el vehículo.

*No habiendo Caparra cumplido con el contrato notificándole prontamente a la General Motors los desperfectos del vehículo vendido al demandante, procede condenar a Caparra Motors a pagarle a General Motors lo que esta última pague al demandante.*